IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| In re: Nadine Evette Lanier,<br><br>    Debtor. | Case No. 19-40185-JJR7 |
| Lisa Watson,<br><br>    Plaintiff,<br><br>v.<br><br>Nadine Evette Lanier,<br><br>    Defendant. | AP No. 19-40008-JJR |

MEMORANDUM OPINION

I-Introduction

In the fall of 2017 Lisa Watson ("Watson") filed a lawsuit in the Circuit Court of St. Clair County, Alabama (the "Circuit Court")[1] claiming that Nadine Evette Lanier (the "Debtor"), trespassed on and injured her property. After a trial, the Circuit Court entered an Order (the "Order")[2] awarding Watson damages, attorney's fees and injunctive relief. The Debtor then filed chapter 7 bankruptcy in an attempt to discharge her liability to Watson under the Order, but Watson alleged in this adversary proceeding that the Debtor's liability was nondischargeable under 11 U.S.C. § 523(a)(6) because the injury to her property was caused by the Debtor's willful and malicious actions.

---

[1] Def. Ex. 1.

[2] Def. Ex. 8.

During the trial of this adversary proceeding both parties testified and offered into evidence numerous exhibits, and thereafter the court took the matter under advisement. After considering the evidence, applicable federal and state statutory and case law, and arguments of counsel, and for the reasons stated below, the court has concluded that the Debtor's liability under the Circuit Court's Order should be discharged in her bankruptcy case.

<u>II-Jurisdiction; Core Proceeding</u>

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b), and the general order of reference by the United States District Court for the Northern District of Alabama, dated July 16, 1984, as amended July 17, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I)—"determinations as to the dischargeability of particular debts"—and therefore the court may enter a final order and judgment, subject to review under 28 U.S.C. § 158. The court's findings and conclusions are set forth below as required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

<u>III-The Creek, the Pipe, and the Fence</u>

Watson and the Debtor are neighbors. Their homes are in a subdivision in St. Clair County, Alabama, and their residential lots share a common boundary line of approximately 200 feet.[3] The Debtor moved into her home during 2004 and not long thereafter Watson built her home next door. A small creek that carries surface drainage runs behind both residences.[4] The volume of water in the creek varies from a trickle during dry weather to a small torrent during periods of heavy rain.[5]

---

[3] Pl. Ex. 2.

[4] *Id*.

[5] Def. Exs. 10 and 12; Pl. Exs. 4 and 7(b).

2

The creek flows first across the Debtor's lot and then continues across Watson's lot. During the year 2010, the Debtor buried a 50-foot long, 36-inch diameter, corrugated plastic pipe in the creek bed to carry the water across a portion of her lot.[6] The end of the pipe encroached 7.16 feet beyond the property line before it emptied into the open creek bed that continued across Watson's lot. After the Debtor installed the pipe, new residential subdivisions were developed upstream. The surface water runoff from the new construction flows into the creek, thus significantly increasing its volume during periods of heavy rain. The water flowing down the creek, through the Debtor's pipe, and into the creek behind Watson's property caused considerable erosion to Watson's property in and around the creek bed.

A narrow strip of land between the two lots was claimed by both parties, although it was ultimately shown to belong to Watson. While its ownership was in dispute, it became a no-man's land. Watson would plant flowers, shrubs and small trees, and install landscaping in the area, and the Debtor would indecorously remove them. For example, Watson planted a banana tree close to the end of the pipe but it was uprooted by the Debtor. The Debtor claimed the tree's roots could have grown into her pipe.

During the summer of 2017, the Debtor hired a surveyor to mark the property line. She erected a chain-link fence along this line in an effort to stop what the Debtor then believed to be Watson's encroachment onto the Debtor's side of the no-man's land between the two lots. Her surveyor located an iron pin on Watson's back property line. Unfortunately, he mistook this pin as marking the common rear corner of Watson's and the Debtor's lots; however, the pin he found

---

[6] The Debtor's lot is approximately 100 feet wide where it is traversed by the creek. The first 50 feet remained an open creek bed while the last 50 feet before the property line was contained in the buried pipe.

marked the corner of a rear neighbor's lot, not the common corner of the parties' two lots. The marker the Debtor's surveyor mistook for the parties' corner was 7.16 feet beyond the actual location of the parties' corner, thus resulting in an encroachment when the fence as erected.

Shortly before the fence was built, Watson hired her own surveyor who marked a different property line that indicated the no-man's land belonged to her. Not surprisingly, each of the parties claimed her surveyor was correct, and the Debtor proceeded to build the fence. The Debtor's surveyor eventually admitted his mistake, albeit after the fence was installed.[7]

After the fence was built, Watson's surveyor prepared a survey plat showing the encroaching portions of the pipe and fence.[8] In addition to the encroachments, the plat revealed there was no surveyor's iron pin installed to mark the parties' common corner in the rear—or if there was one, neither Watson's nor the Debtor's surveyor found it.[9] The encroaching fence was the proverbial final straw, and soon after it was built, Watson filed suit against the Debtor in the Circuit Court.

---

[7] When the two parties first moved into their respective homes, they were both married, but later both divorced. Although Watson's former husband had one or more conversations with the Debtor and perhaps the Debtor's former husband concerning the installation of the pipe, it was unclear to what extent their former husbands were involved in the ensuing acrimony between the two neighbors. In any event, both parties were divorced by the time the fence was erected and the Circuit Court lawsuit was filed.

[8] Pl. Ex. 1.

[9] Although Watson's surveyor began work and cautioned the Debtor that he believed the Debtor's survey line was wrong before the Debtor built the fence, the Debtor nonetheless proceeded with building the fence along the line as her surveyor had marked it. Watson's survey was not completed until after the Debtor installed her fence. Watson's surveyor ultimately installed an iron pin at the true common rear corner of the parties' lots and prepared his drawing after the fence was installed.

IV-State Court Trespass Lawsuit

Watson filed her lawsuit against the Debtor in the Circuit Court on October 1, 2017 for trespass and injury to her property. During the Circuit Court trial the judge made an *in camera* inspection of the properties, and thereafter he entered the Order that awarded Watson damages of $32,418.77 plus $3,000 for attorney's fees,[10] and injunctive relief.[11] The injunctive relief required the Debtor to remove the 7.16 feet of pipe that encroached onto Watson's property and the entire fence (together, the "Encroachments"). The fence was removed and the Debtor attempted to remove the encroaching end of the pipe, but that effort was abandoned when an argument ensued and the police were summoned. The present status of the pipe's encroachment is unclear.

V-The Circuit Court's Order

The Circuit Court's Order is ambiguous and conflicting in parts, but it is final and binding on the parties, and its findings and conclusions may not be altered by this bankruptcy court.[12]

---

[10] The Circuit Court's Order was introduced at the adversary proceeding trial as Def. Ex. 8 and Pl. Ex. 21. The Order did not disclose the basis for awarding attorney's fees to Watson. There was no contract between the parties and there is no Alabama statute that awards attorney's fees to a prevailing party in a trespass action. Nonetheless, that Order is final and cannot be reviewed by this court for error.

[11] The Order was affirmed by the Alabama Court of Civil Appeals and no further appeal was taken. (Def. Ex. 9.) The complaint filed by Watson in the Circuit Court made no specific mention of the pipe, although she did allege that the Debtor was guilty of "unauthorized pouring of water onto Plaintiff's property, and installing a fence on Plaintiff's property, causing damages in the amount of $7660.00." (Def. Ex. 1.) The evidence of damages offered by Watson, as reflected in the Order, greatly exceeded that amount. It is also interesting to note that the appraisal of the Debtor's lot, not including her home and improvements, filed in her bankruptcy case (Bk. Doc. 6), indicated a value of $36,000. It appeared the Debtor's lot and Watson's lot were very similar in size and topography, and one would assume in value. If that assumption is accurate, the damages plus attorney's fees awarded to Watson for the injury to her backyard were almost equal to the entire value of her lot.

[12] A bankruptcy court cannot review for error final state court judgments that were rendered before the bankruptcy of a party was filed, even if it would otherwise have jurisdiction over the matter. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Casale v.*

Nonetheless, this court is left with the task of interpreting the Order and determining its consequences now that the Debtor has filed for relief under title 11.

Paragraphs 1 and 2 of the Order are clear and unambiguous, and read as follows:

1. The [Debtor] is found to be actively trespassing onto the property of [Watson], per the "Boundary Survey Lot 7 Timber Ridge First Addition" provided by Surveyor Michael Blackwell, and which is identified further as being marked is [sic] "Exhibit A" as attached to [Watson's] Complaint, filed October 1, 2017.

2. Said trespass includes a 36" water pipe, which encroaches 7.16" [sic] onto [Watson's] property and a chain link fence, which also encroaches onto [Watson's] property.

Significantly, the Circuit Court found that the Debtor was "actively trespassing" because of the Encroachments—the encroaching end of the pipe and the fence—but made no mention of the remaining, non-encroaching portion of the pipe or *the water that flowed through it*, as being an active trespass. This court interprets "actively trespassing" as synonymous with continuously trespassing.

The Circuit Court awarded Watson damages of $32,418.77—all compensatory. Paragraph 3 of the Order itemized the damages as follows:

3. The Plaintiff's Damages are found to be calculated at $32,418.77, which were testified to at trial and which include the following:

Landscaping
Install shrubs, ferns, and flowering evergreens in and around affected areas.
$2,956.24

Stone
Install a stone staircase leading down to the bridge, install several boulders on the sides for support. Install three terraces on both sides of reconstructed fountain area. Install several

---

*Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). "The *Rooker-Feldman* doctrine therefore bars both claims that could have been brought in a prior state court proceeding and claims 'inextricably intertwined' with the state court's judgment." *In re JXB 84 LLC*, No. 18-CV-23815, 2019 WL 4737601, at *3 (S.D. Fla. Sept. 25, 2019).

small retaining walls around the Banana Trees and existing shrubs near the house for added support. $8,985.45

Soil
Bring in 35 tons of topsoil, distribute and compact in areas affected by neighboring drainage issues. $1,672.11

Retaining Wall
Repair small retaining wall and damage caused to right of property[.]
$2,507.32

Sod
Install new sod in areas which have been impacted by neighboring draining issues, particularly on slopes running parallel to creek.
$2,498.67

Fountain
Remove existing stone in the water thoroughfare. Excavate as needed to install a collection basin and install a rubber membrane for waterproofing. This will span up the sides 10 feet from the center of the water thoroughfare to ensure sufficient water retention and prevention of erosion during heavy water flow caused by drainage issues. We will connect to the existing 36" pipe and bring the line down to the bridge. Once the line is installed we will begin resetting the existing stones for the river bottom covering the new pipe. [$]13,798.98

In paragraph 4, the Debtor was ordered "to remove the said Chain Link Fence and . . . to Remove the said 36["] water pipe, which encroaches onto [Watson's] Property within sixty (60) days of this Order."[13] And paragraph 5 of the Circuit Court's Order stated that:

> 5. Said removal [of the Encroachments] shall be paid for entirely by the [Debtor] and shall be done in a manner that insures that water from the [Debtor's] property does not flow onto [Watson's] property and in a manner that does not harm [Watson's] property in any way.

Read literally, paragraph 5 would require the Debtor to remove the Encroachments "in a manner that insures that water does not flow onto [Watson's] property . . . ." However, before the pipe

---

[13] In paragraph 4, the pipe was erroneously described as being a "36′ [i.e., foot] water pipe." Watson's survey (Plaintiff's Exhibit 1), and the parties, referred to the pipe as being 36 inches in diameter, which is unquestionably accurate.

was installed, water flowed down the creek and across the Debtor's property onto Watson's property. Removing 7.16 feet from the pipe's end will not stop the water. In fact, removing the entire pipe will not stop the water from flowing downstream across the Debtor's property and onto Watson's property.

Paragraph 5 should be interpreted in light of the entire Order, and especially the final itemization of damages at the end of paragraph 3, quoted above under the caption "Fountain," which anticipated Watson would "connect to the *existing* 36" pipe and bring the line down to the bridge [and] [o]nce the line is installed we [i.e., Watson] will begin resetting the existing stones for the river bottom covering the *new* pipe" (emphasis added). If the entire length of pipe buried beneath the Debtor's property were removed, there would be no *existing* pipe left to which Watson's *new* pipe could connect. Moreover paragraph 6 provided, "[The Debtor] shall insure that no part of said 36[inch] water pipe and fence will be located on the property of [Watson] after removal."[14] If the entire pipe, not just the encroaching 7.16 feet, were to be removed, paragraph 6 would be superfluous: Removing the entire pipe would necessarily leave no part located on Watson's property. Accordingly, when paragraph 5 is considered within the context of the entire Order, it becomes obvious that the "removal" in that paragraph is limited to the Encroachments— the 7.16 feet of pipe and the fence—not the entire length of pipe buried across the Debtor's property. Thus, paragraph 5 should be deciphered as requiring that the removal of the Encroachments be done in a manner that does not harm Watson's property; however, doing so "in a manner that insures that water from the [Debtor's] property does not flow onto [Watson's] property" is nonsensical and cannot be reconciled with the remainder of the Order, the facts in the

---

[14] Paragraph 6 again erroneously described the pipe as being a "36′ [i.e., foot] water pipe."

case or the laws of physics—water flowing in a creek runs downhill. In any event, Watson did not seriously argue otherwise at trial.

VI-Chapter 7 Bankruptcy and Adversary Proceeding Challenging Discharge

On February 5, 2019, in an effort to discharge her liability to Watson under the Circuit Court's Order, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.* and herein, the "Code").[15] Soon thereafter, Watson filed this adversary proceeding alleging the Debtor's liability under the Order should be excluded from the Debtor's discharge. Watson claimed the money damages and other relief awarded to her in the Order were the result of the Debtor's willful and malicious injury to Watson's property and, therefore, should be nondischargeable under Code § 523(a)(6), which provides that "[a] discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury . . . to the property of another entity."[16]

VII-Motion for Relief from Automatic Stay and Lift Stay Order

After filing the adversary proceeding, Watson filed a Motion for Relief from Automatic Stay (Bk. Doc. 38) seeking permission to return to the Circuit Court to obtain relief from the Debtor's alleged continuing, ongoing trespass, which Watson argued gave rise to postpetition

---

[15] It appeared from her schedules that the Debtor was not in financial distress before she became liable to Watson for the trespass damages. In Part 2 of Schedule E/F—Nonpriority unsecured Claims (Bk. Doc. 1, p. 23) the Debtor described Watson's claim as a disputed "money judgment for trespass to real property" in the amount $50,000. Schedule E/F also listed claims for a credit card in the amount of $4,483, attorney fees of $250—incurred while defending Watson's suit— and a $20,000 student loan. The Debtor also scheduled a home mortgage which she later reaffirmed.

[16] The lawyers representing Watson and the Debtor in the Circuit Court lawsuit did not continue to represent them in the bankruptcy case and the adversary proceeding. Both parties retained different counsel.

claims that, regardless of the outcome of her adversary proceeding, would not be discharged in the Debtor's bankruptcy case. This court entered an Opinion and Order (Bk. Doc. 64 and herein, the "Lift Stay Order") that, essentially, terminated the stay to the extent necessary for the enforcement of the injunctive relief provided in paragraph 4 of the Circuit Court's Order, but denied all other relief sought in Watson's motion.[17] As mentioned above, paragraph 4 required the Debtor to remove the Encroachments, nothing more.[18]

---

[17] The Lift Stay Order examined the Circuit Court's Order and, like this Opinion, attempted to reconcile its ambiguities, conflicting terms, and typographical and scrivener's errors. A reading of the Lift Stay Order might have led the parties to believe that this court was anticipating that at the trial of the adversary proceeding, the evidence would likely show that the postpetition flow of water from the Debtor's pipe onto Watson's property, and injuries caused thereby, would constitute a continuing, postpetition trespass, unaffected by a discharge granted pursuant to Code § 727. If that was their belief, it was premature. That said, to the extent there is any conflict between the Lift Stay Order, and this Opinion and the Order conforming hereto, the latter two shall control.

[18] At trial, no evidence was offered to indicate that Watson had attempted to enforce the Circuit Court's Order with respect to the removal of the Encroachments following the Lift Stay Order. Paragraph 4 of the Circuit Court's Order, requiring removal of the Encroachments, constituted an equitable claim as defined in Code § 101(5)(B), and although not explicitly expressed, it gave Watson a contingent right to payment in the event the Debtor failed to remove the Encroachments within the allotted 60 days. If the Debtor had not sought bankruptcy relief and had failed to timely remove the Encroachments, she could have been held in contempt of the Order, which, if pursued by Watson, would have likely led to Watson recovering additional damages based on the costs of Watson paying for the removal of the Encroachments. Along with the Order's monetary awards—damages and attorney's fees—the Debtor's liability for removal of the Encroachments, and contingent liability to pay Watson for performing the Debtor's obligation under the Order, remained subject to being discharged; the Lift Stay Order did not change that. It only gave Watson an opportunity, albeit a short lived one, to enforce in the Circuit Court the removal of the Encroachments before the Debtor's discharge was adjudicated in this court— probably a hollow victory for Watson. Nonetheless, as discussed below, should the Encroachments continue postdischarge—limited now to the 7.16 feet of pipe—the same appears to constitute a continuing trespass which will give rise to a postpetition and postdischarge claim that may be pursued by Watson as a new cause of action, but not a claim for contempt or otherwise for the enforcement of the Order. However, Watson's damages, based on the costs of removing the encroaching 7.16 feet, would be limited to whatever she pays to have the encroaching end of the pipe removed from her property.

VIII-§ 523(a)(6); Willful and Malicious Injury

Code § 523(a)(6), the basis for Watson's claim of nondischargeability, provides that "[a] discharge under section 727 [of the Code] . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." In *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329 (11th Cir. 2012) the Eleventh Circuit set out the necessary elements to prove an act was "willful" in the context of § 523(a)(6):

> We have held that proof of "willfulness" requires "'a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another.'" *In re Walker*, 48 F.3d 1161, 1163 (11th Cir.1995) (quoting *In re Ikner*, 883 F.2d 986, 991 (11th Cir.1989)). "[A] debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Id.* at 1165; *see also Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S. Ct. 974, 140 L.Ed.2d 90 (1998) (holding that § 523(a)(6) requires the actor to intend the injury, not just the act that leads to the injury). Recklessly or negligently inflicted injuries are not excepted from discharge under § 523(a)(6). *Kawaauhau,* 523 U.S. at 64, 118 S. Ct. 974.

*Id.* at 1334. And in *Kane v. Stewart Tilghman Fox & Bianci, PA* (*In re Kane*), 755 F.3d 1285, 1293 (11th Cir. 2014) the circuit reiterated the standard for "willfulness" as set out in *Jennings*, and pointed out that it had not decided whether the "substantially certain" standard requires a showing of subjective belief that harm will result, or if it can be satisfied by showing the debtor's conduct was objectively certain to cause harm.[19] The Eleventh Circuit then explained that "malicious" had been defined as "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will. To establish malice, a showing of specific intent to harm another is not necessary." *Id.* at 1294 (quoting *Jennings,* 670 F.3d at 1334); *see also Westlake Flooring Co., LLC v. Staggs (In re Staggs)*, 573 B.R. 898 (Bankr. N.D. Ala. 2017) (Judge Jessup's decision

---

[19] This court need not answer that question as Watson did not meet the burden to establish that the Debtor's actions carried a substantial certainly of harm under either a subjective or objective standard.

11

discussing in depth the Eleventh Circuit authority on "willful and malicious"). To succeed under § 523(a)(6), a plaintiff must prove both willfulness and malice by a preponderance of the evidence. *Kane,* 755 F.3d at 1293.

Without question there was visceral animosity between Watson and the Debtor that began in earnest sometime after the pipe was installed and reached its nadir when the fence was erected. Remember the pipe was installed in 2010 and it was only after the fence was erected seven years later that Watson filed her lawsuit in Circuit Court. But the evidence did not establish there were hard feelings between the parties before the pipe was installed, nor that the pipe was installed as a wrongful, excessive act or as an act of vengeance. Apparently, the Debtor merely installed the pipe as an improvement to her backyard. As mentioned, after the pipe was installed, new upstream construction increased the volume of surface drainage into the creek which would have intensified the erosion of Watson's property and no doubt heightened her focus on the worsening situation in her backyard, especially during periods of heavy rain. The photographs offered into evidence depicting erosion (Pl. Ex. 19) and heavy runoff (Pl. Exs. 4, 7(b), 23, 26) were all taken in 2017, 2018, and 2019, while a photograph taken during the summer of 2016 (Def. Ex. 13) showed no significant signs of erosion.

When the Debtor buried the drainage pipe across a portion of her back yard in 2010 and seven years later erected a fence along what her surveyor mistakenly thought was the property line, she indisputably intended to take those actions. However, those intentional acts of installing the pipe and fence were not done with the intent to injure Watson's property (or with a substantial certainty that an injury would occur under either an objective or subjective standard), so the acts were not "willful." Likewise, installing the pipe and fence were not wrongful, nor unjustified or excessive, and therefore they were not "malicious." While it was ultimately shown to be unwise

12

Case 19-40008-JJR    Doc 20    Filed 01/10/20    Entered 01/10/20 16:01:53    Desc Main
Document    Page 12 of 19

and certainly was stubborn, the Debtor's decision to build the fence despite the warning from Watson's surveyor was not excessive or without just cause or wrongful because the Debtor was relying on her own surveyor's line, erroneous though it turned out to be. In its Order the Circuit Court never addressed whether the Debtor acted willfully or maliciously,[20] but the evidence presented by Watson during the trial of the adversary proceeding failed to prove by a preponderance any malicious or willful intent by the Debtor to injure Watson's property. And there was no credible evidence that the Debtor knew, or even under the harsher objective standard, should have known, that the pipe and fence were substantially certain to cause injury to Watson's property. Similarly, the evidence did not establish by a preponderance that the pipe and fence were installed wrongfully, without just cause, or as excessive measures.

The fence, or at least its location over the property line, was an innocent mistake caused by the Debtor's relying on an erroneous survey. The fence has now been removed and there was no evidence of any residual injury that it caused. The evidence did not establish that the pipe itself caused more water to flow onto Watson's property. It carried the same stream that flowed down the creek from above the Debtor's property. The evidence did establish that the volume of runoff across Watson's property after the pipe's installation did increase but was due to upstream development that cannot be blamed on the Debtor. The Circuit Court in its Order did not explain why the Debtor was held responsible for the water and the erosion it caused, but unquestionably it did so hold, and that is something this bankruptcy court cannot reverse or modify.[21] Nonetheless,

---

[20] Watson did seek punitive damages in her Circuit Court complaint (Def. Ex. 1) but none were awarded in the Order. An award of punitive damages would have indicated the Circuit Court found the Debtor acted maliciously.

[21] Perhaps the Circuit Court reasoned that the pipe increased the velocity of the water or concentrated the flow that otherwise might have spread over the creek bank. Regardless, there was no credible evidence presented in the trial of the adversary proceeding to prove that the Debtor

13

a debtor's liability for a prepetition tort, including trespass, that is not excepted from discharge under Code § 523(a)(6), is dischargeable under Code § 727(b). Thus, because the necessary elements of willfulness and malice were not proven by a preponderance of the evidence, all the Debtor's liability—monetary damages, attorney fees, and injunctive relief—under the Circuit Court's Order are due to be discharged.[22]

IX-Res Judicata and Discharge of Prepetition Claims

In its Order, the Circuit Court stated, "The [Debtor] is found to be actively trespassing . . . . Said trespass includes a 36" water pipe, which encroaches 7.16" [sic] . . . and a chain link fence . . . ." (Order 1, 2.) As mentioned above, the Circuit Court's finding that the Debtor was "actively trespassing" due to the encroaching 7.16 feet of pipe and fence is tantamount to a finding that those Encroachments constituted a continuous trespass. The Alabama Supreme Court has held that "where the trespass is a continuing one, and not of that class of permanent appropriations, to be assessed for all time at once, there may be successive actions for each continuance of the trespass." *Louisville & Nashville R.R. Co. v. Higginbotham*, 44 So. 872, 875 (Ala. 1907).

In light of the animosity between the parties, the court is concerned that Watson may claim in a second Circuit Court lawsuit that the water that continues to flow through the Debtor's pipe and empties into the creek bed on Watson's property constitutes a continuous trespass, giving rise

---

intended for the pipe to injure Watson's property, or to prove that the Debtor knew (or that a reasonable person in her position would have known) that such injury was substantially certain. Indeed, the pipe had been in place for seven years before Watson filed suit.

[22] The monetary damages were the $32,418.77 plus the $3,000 attorney's fees awarded under the Order. The injunctive relief—relief for equitable claims—should also be discharged, although, as discussed below, any remaining portion of the 7.16 feet of encroaching pipe that has not been removed will likely support a postpetition trespass claim to enforce its removal. Hopefully that simple task, if not already completed, will be taken care of without the necessity of further litigation between the parties.

Case 19-40008-JJR    Doc 20    Filed 01/10/20    Entered 01/10/20 16:01:53    Desc Main
Document    Page 14 of 19

to claims that are not discharged under Code § 727(b) because those claims did not exist on the date the Debtor filed her bankruptcy case. However, other than another lawsuit seeking the singular claim for the removal of the encroaching 7.16 feet of pipe[23]—assuming it has not already been removed—pursuing claims for continuous trespass based on the factual findings set forth in the Circuit Court's Order and this Opinion would be a violation of the discharge injunction imposed by Code § 524(a). As discussed below, those claims are also barred by the doctrine of res judicata.

In *Devenish v. Phillips*, 743 So. 2d 492 (Ala. Civ. App. 1999), Devenish filed suit against Phillips in state district court after Phillips constructed a retaining wall on a residential lot adjacent to a lot owned by Devenish. A portion of the underpinning of the wall encroached onto Devenish's lot. Devenish claimed poor construction and drainage created a hazard on his driveway. The district court entered a $1,500 judgment in favor of Devenish, but notably did not order Phillips to correct the problem, i.e., did not order the removal of the wall that was causing the water hazard. Thereafter, Devenish claimed water continued to drain onto his driveway, and despite his demands, Phillips ignored him, so Devenish sued Phillips the second time. In the meantime, Phillips sold his lot to Kirker. In the second suit, the district court entered summary judgment in favor of Phillips, ruling that he was not the proper defendant because he no longer owned the lot. Nonetheless, the Court of Civil Appeals addressed the merits of the parties' respective positions. Devenish argued that he should be allowed successive actions for continuous trespass, citing

---

[23]The fence is gone, and although the Debtor's prepetition obligation to remove the encroaching pipe is discharged, to the extent the 7.16 feet of encroaching pipe remains, the same is a continuous postpetition trespass, and will entitle Watson to pursue a postpetition lawsuit for its removal, although further litigation would appear to be nonsensical in light of the minor effort needed to complete the removal. One would hope the parties would bury the hatchet long enough to allow the Debtor to complete that chore.

Alabama Code § 6-5-217 (1975).[24] Phillips countered that the second lawsuit was barred by the doctrine of res judicata, and the appellate court agreed.

As explained by the *Devenish* court, there is a critical difference between a permanent change that causes a continuing harm and a continuous trespass; distinguishing between the two depends on the remedy sought by the plaintiff or awarded by a court:

> We note that one remedy for a continuing trespass is a permanent injunction, which, in the present case, could provide a removal of the encroachment. However, money damages could also be appropriate. Devenish did not seek an injunction in his first action. He asked for and received money damages. Devenish's second lawsuit is a result of his not asking for appropriate relief or for not suing for enough money the first time, not because of some new injury. The facts of this case show a single encroachment resulting in harm, not a continuous wrong involving new harm to the property on each occasion. Devenish had a full and fair opportunity to be heard on his trespass claim when he filed his first lawsuit in February 1996. He is now barred by the doctrine of res judicata from relitigating his claims.

743 So. 2d at 494-95.

Accordingly, a plaintiff's choice of remedy or the remedy actually awarded by the trial court in a trespass action may preclude the recovery of future damages for what otherwise might be considered a continuing trespass.[25] One would assume the encroaching underpinning of the wall in *Devenish* would have constituted a classic continuous trespass because it was an unauthorized structure maintained on the plaintiff's property. "[O]ne remedy for a continuing trespass is a permanent injunction, which . . . could provide a removal of the encroachment." *Id.*

---

[24] "Damages for continuous trespass are limited to those which have occurred before and up to the trial. Subsequent damages flowing from a continuance of the trespass give a new cause of action." Alabama Code § 6-5-217 (1975).

[25] Watson sought a restraining order and preliminary injunction in her Circuit Court complaint, along with general relief "that the trier of fact deems is just and fair." (Def. Ex. 1.) She did not, however, specifically demand removal of the entire pipe or demand that the Debtor stop the water flowing through the pipe—the latter being impossible without creating an upstream reservoir. In any event, res judicata applies to claims actually litigated and to those claims that could have been pursued under the facts of the case but were not.

at 494. "A structure maintained on another's property is a continuing trespass." *Alabama Power Co. v. Gielle*, 373 So. 2d 851, 854 (Ala. Civ. App. 1979) (power pole); *see also Gatlin v. Joiner*, 31 So. 3d 126 (Ala. Civ. App. 2009) (boat dock and boat ramp).

The wall in *Devenish* continued to channel water onto the plaintiff's property after the first lawsuit, and he sued again; however, the appellate court held that the second suit was barred by the doctrine of res judicata. The court stated that the damages awarded in the first suit were for a permanent change to the land, and that the plaintiff had failed to seek an injunction requiring the wall's removal and did not demand sufficient damages in the first suit to cover his loss. Although the encroachment of the wall's underpinning would appear to have otherwise supported a classic continuous trespass claim, because the plaintiff chose, perhaps unwittingly, in his first lawsuit to seek damages based on the permanent harm caused by the wall and did not seek an injunction requiring its removal, he was barred from asserting claims for the subsequent—continuous—harm caused by water channeled onto his property.

The injunction in the Circuit Court's Order required the removal of the 7.16 feet of encroaching pipe and the fence, nothing else. Like Devenish, Watson was awarded money damages for the harm to her property. Although it is difficult to see how removal of the entire pipe would improve Watson's situation, an action seeking its removal is no longer viable. Watson's position, vis-a-vis the pipe and the water flowing through it, is identical to that of the plaintiff in *Devenish* with respect to the retaining wall and the water it deflected. The Debtor's pipe "resulted in a permanent change to the land, with a continuing harm. Because the [pipe] has produced a permanent injury to the land, [Watson's] right was to full redress in a single action for trespass, and [s]he had no right to file successive actions." *See Devenish,* 743 So. 2d at 494.

17

Case 19-40008-JJR    Doc 20    Filed 01/10/20    Entered 01/10/20 16:01:53    Desc Main
Document    Page 17 of 19

Watson had her day in Circuit Court with respect to the pipe, the water that flows through it and the fence, and all claims under the facts of her case that were actually litigated or that *could have been* litigated may not be raised a second time; such are barred by the doctrine of res judicata.[26] And more importantly in the context of this adversary proceeding, because claims that could have been litigated in Circuit Court, but were not, were in fact prepetition debts, any attempt to resurrect them in another lawsuit will constitute a violation of the discharge injunction imposed under Code § 524(a).

X-Conclusion

Regardless of what one thinks of the merits of Watson's state law claims against the Debtor, they were fully litigated in the Circuit Court and its Order is now final. As with any defendant who became liable under a court judgment imposing money damages or equitable relief, or both, the Debtor in this case is entitled to discharge that liability pursuant to Code § 727 unless one of the exceptions found in Code § 523(a) is proven by a preponderance of the evidence. In this adversary proceeding, Watson alleged that her property was injured by the Debtor and the Circuit Court's Order conclusively established the truth of that allegation. But Watson failed to prove the Debtor caused the injury willfully or maliciously when she installed her pipe or erected her fence. Under § 523(a)(6), to be excepted from discharge, the injury must be both willful and malicious. To be willful, the injury must have been inflicted with the intent to injure or with a substantial

---

[26] In Alabama, "[t]he elements of res judicata are '(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions.'" *Austill v. Prescott*, No. 1170709, 2019 WL 3050439, at *7 (Ala. July 12, 2019) (quoting *Equity Res. Mgmt., Inc. v. Vinson*, 723 So. 2d 634, 636 (Ala. 1998)). "If those four elements are present, then any claim that was, *or that could have been*, adjudicated in the prior action is barred from further litigation. Res judicata, therefore, bars a party from asserting in a subsequent action a claim that it has already had an opportunity to litigate in a previous action." *Id.* (emphasis added).

certainty that an injury would result (under either an objective or subjective standard). To be malicious, the infliction of the injury must have been wrongful, excessive, or without just cause. Neither "willfulness" nor "malice" was proven by a preponderance in this matter. Thus, the Debtor's liability to Watson under the Circuit Court's Order is discharged under the Order of Discharge entered in the Debtor's bankruptcy case on October 16, 2019 (Bk. Doc. 63).[27] In compliance with Rule 7058 of the Federal Rules of Bankruptcy Procedure, the court will enter a separate Order conforming with this Opinion.

Done this 10th day of January 2020.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[27] Except for narrowly defined categories, such as creditors holding domestic support obligations, the Code does not distinguish among creditors whose claims are subject to discharge. And like the plaintiff in *Devenish*, Watson cannot change the consequences of what was awarded to her by the Circuit Court, and it matters not that her claims against the Debtor are discharged in the Debtor's bankruptcy case. Usually it is corporate and commercial creditors—payday lenders, credit card issuers, banks, and credit unions for example—whose claims are discharged in consumer bankruptcy cases, but creditors who are individuals, even when they are a debtor's neighbor, are not immune from the Code's broad discharge provisions. "The members of Congress were elected by the public and when they have made the trade-offs which are set forth in the statute, courts must enforce those statutes. . . . [W]hen confronted with a clear statutory command like the one in the bankruptcy code, that is the end of the matter." *In re Palladino*, 942 F.3d 55, 59 (1st Cir. 2019).